FILED
2021 Feb-01  AM 10:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| CLARENCE WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:19-cv-01107-AKK-HNJ |
| OFFICER ROGERS, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* complaint seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 1). The plaintiff names the following defendants in the complaint: Officer Arnold C. Rodgers, Captain Kenneth R. Smith, and Officer John Doe. (*Id.* at 3). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). The case presently proceeds before the undersigned on defendants' motion for summary judgment.

For the reasons stated herein, the undersigned **RECOMMENDS** the court **DISMISS WITH PREJUDICE** plaintiff Williams's claim against John Doe. The undersigned **FURTHER RECOMMENDS** the court **GRANT** the motion for summary judgment as to defendant Rogers and **DENY** it as to defendant Smith.

Finally, the undersigned **RECOMMENDS** the court **REFER** Williams's Eighth Amendment claim against defendant Smith to the undersigned for further proceedings.

## I. Procedural History

On October 29, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to defendants Rogers and Smith and directing the defendants to file a special report addressing the plaintiff's factual allegations. (Doc. 10). The undersigned advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On January 22, 2020, defendants Rogers and Smith filed a special report, supplemented by affidavits and/or other evidence. (Doc. 20). On January 27, 2020, the undersigned ordered the plaintiff to examine the special report and notify the court within twenty (20) days of the name of defendant John Doe. (*Id.*). The undersigned further ordered defendants Rogers and Smith to comply within the Order for Special Report within ten (10) days by submitting a copy of all described video/audio recordings of the June 22, 2019, incident that is the basis of the complaint. (Doc. 21).

The plaintiff did not respond to the order directing him to identify the name of defendant John Doe, and counsel for defendants Rogers and Smith notified the court that Bibb Correctional Facility and the Alabama Department of Corrections Investigation and Intelligence Division had reported that no video of the incident exists.

(Doc. 25). On May 7, 2020, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 26). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Rule 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). That deadline has expired and the court has received no response from the plaintiff.

This matter now proceeds before the court on the motion for summary judgment filed by defendants Rogers and Smith.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of

proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III. Summary Judgment Facts

The plaintiff, who is black, declares that inmate Jacoby, who is a gay and white, "doesn't stand a chance" in prison without being raped, extorted, or beaten on a regular basis. (Doc. 1 at 5). He further states that many white inmates rely on black inmates to keep them safe because "90-95%" of the corrections officials are black and they cannot and do not try to protect white inmates. (*Id.* at 2, 5). The plaintiff and Jacoby agree that, in addition to their friendship, the plaintiff acts as protection and security for Jacoby. (*Id.* at 5, 11).

The plaintiff declares that in April, May, and June, 2019, he and Jacoby told Captain Kenneth Smith that "inmates" had "pulled knives on us," broken into "our lockers and stole from us," and "jumped on us when we don't give them Jacoby's money." (*Id.* at 2). They asked Captain Smith "to move" them from D-Dorm to F-Dorm because it offered a safer environment for homosexual men and other "prey" to live. (*Id.* at 12). Captain Smith repeatedly refused to move the plaintiff and Jacoby to another dorm or "remove the problem inmates" from D-Dorm. (*Id.* at 4). Instead, Captain Smith told the plaintiff, "'You're a black man ain't ya? Ain't you and Jacoby Gangsters? Why don't you guys just kill these people extorting [you] or pay someone else to make our problems go away!" (*Id.* at 2).

On June 22, 2019, ADOC officials assigned Officers Rogers to provide security in D-Dorm's cubicle. (*Id.* at 2, 6, 11). Rogers knew problems would occur if he slept

5

at his post; in recent months there had been five inmate-on-inmate stabbings and one inmate-on-inmate death. (*Id.* at 6, 11).

Around lunchtime inmates 'Boosie' and 'Woody' robbed the plaintiff and Jacoby. (*Id.* at 2, 11).[1] During the robbery Boosie kept yelling, "All I want is the cookies out the box," as he stole food and hygiene items belonging to the plaintiff and Jacoby from the plaintiff's locker box. (*Id.* at 11). Boosie and Woody beat and stabbed the plaintiff repeatedly "for over 20 minutes" because the plaintiff tried to "protect what's mine and Jacoby's," and because Officer Rogers was asleep in D-Dorm's cubicle. (*Id.* at 2, 5, 11). Inmates Minniefield and Jacoby attest that they witnessed the assault and saw that defendant Rogers did not "call a code" because he was asleep in the cubicle with his feet on the desk. (*Id.* at 8-9, 11). Jacoby purportedly used a cell phone to film Rogers sleeping while Minnifield ran to E-Dorm and told another officer to call code because he thought the plaintiff was dead and the D-Dorm officer was asleep. (*Id.* at 9). That officer called the emergency code and ran to D-Dorm to assist. (*Id.*).

In D-Dorm Jacoby testifies the plaintiff lay bleeding on a table. (*Id.* at 12). Officer John Doe refused to move the plaintiff so Jacoby picked him up and wheeled him to the medical unit. (*Id.*). According to the infirmary nurse's body chart documentation, the plaintiff had lacerations to the top right side of his head, underneath

---

[1] The defendants do not dispute that inmates Boosie and Woody are DAnthony Dillard and Derrick Woody. Inmate Jacoby declares that Boosie and Woody had assaulted him, but does not state with particularity when this occurred. (Doc. 1 at 11). Therefore, it is uncertain whether Jacoby's testimony references an assault that occurred prior to June 22 or the assault underlying the complaint.

his left eye, on his left upper lip, on his right hand middle finger, on his neck and in the middle of his back. (Doc. 20-5 at 1). Officials transported the plaintiff to a hospital where they stitched up his head, taped his broken arm, and evaluated a stab wound to his back; the plaintiff also suffered a broken nose and declares he suffered extreme pain all over his body while recovering. (Doc. 1 at 12; *see also*, Docs. 20-9 & 20-10).

Defendant Kenneth Smith generally denies "all allegations against" him, and declares it "is not correct" that he "prevented [the plaintiff] from protecting [Jacoby on June 22, 2019], [and] it is the responsibility of correctional officers to ensure the safety of all inmates." (Doc. 20-2). Defendant Rogers testifies that the plaintiff never reported that he feared his safety and "at no time" was he asleep during his June 22, 2019, tour of duty. (Doc. 20-1).

### IV. Analysis

**A.     Corrections Officer John Doe**

Precedent well establishes that "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). As such, plaintiff bears the responsibility to ascertain the name of each defendant he intends to sue in this action and indicate those names on the complaint. The court afforded the plaintiff an opportunity to review the special report, which includes numerous documents from which the plaintiff could have identified defendant John Doe within the time period allotted by the court. (Doc. 21). The plaintiff failed to do so. Accordingly, the plaintiff's Eighth Amendment claim against Corrections Officer John

Doe merits dismissal with prejudice.

**B.     Officer Arnold Rogers and Captain Kenneth Smith**

    **1.     Eleventh Amendment Immunity**

A law "suit against the State [of Alabama] and its [agencies for monetary damages is] barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that 'the State of Alabama shall never be made a defendant in any court of law or equity.'" *Id.* Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the state itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).

Defendants Rogers and Smith are employees of the Alabama Department of Corrections, an agency of the State of Alabama. Therefore, to the extent the plaintiff names Rogers and Smith as defendants in their official capacity, Eleventh Amendment immunity prohibits the plaintiff's suit for monetary damages.

    **2.     Cruel and Unusual Punishment**

        **a.     Failure to Protect Claim Standard**

As an initial matter, defendants content that qualified immunity protects them from plaintiff's claims. "'The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual

capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). There exists no dispute defendants were performing their discretionary duties at all times relevant to this case. "Once it has been determined that the official was acting within his discretionary duties, the burden shifts to the plaintiff to show (1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation. *Id.* (citation omitted).

As the Eleventh Circuit recently recounted in *Green v. Hooks*, 798 F. App'x 411 (2020), the "Eighth Amendment prohibits the infliction of "cruel and unusual punishments." *Id.* at 420 (citing U.S. Const. amend. VIII; *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1319 (11th Cir. 2005)). Thus, "'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Although prison officials have a duty to protect a prisoner from violence by other prisoners, not "'every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "'Rather, a prison official violates the Eighth Amendment [in the context of a failure to prevent harm] only when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official

does not respond reasonably to the risk.'" *Id.* (quoting *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016)).

Thus, a § 1983 Eighth Amendment failure-to-protect claim requires a plaintiff to "'produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" *Green*, 798 F. App'x at 421 (quoting *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)). "'Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

A plaintiff must produce evidence that the defendant "actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citing *Rodriguez v. Sec'y for Dep't of Corr.,* 508 F.3d 611, 617 (11th Cir. 2007) (alterations in original)). "In determining subjective knowledge, a court is to inquire whether the defendant was aware of a 'particularized threat or fear felt by [the plaintiff].'" *McBride v. Rivers*, 170 F. App'x 648, 654 (11th Cir. 2006) (quoting *Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir. 2003)). "The defendant 'must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the [defendant] must also draw that inference.'" *Id.* (quoting *Carter*, 352 F.3d at 1349) (quotation and marks omitted). To satisfy the objective component, a plaintiff must produce evidence that the

defendant "disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.*

Finally,

> [S]ection 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *Williams,* 689 F.2d at 1380 (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 692, (1978)); *Redman v. County of San Diego,* 942 F.2d 1435, 1439 (9th Cir. 1991) (en banc) (requiring an act or omission causing the constitutional deprivation), *cert. denied,* 502 U.S. 1074 (1992). Section 1983 thus "focuses [the] inquiry on whether an official's acts or omissions were the cause— not merely a contributing factor—of the constitutionally infirm condition.

*LaMarca*, 995 F.2d at 1538 (alterations supplied, parallel citations omitted).

### c.     Officer Arnold Rogers

The plaintiff does not attest that he ever informed Officer Rogers about any predatory history concerning other inmates prior to June 22. Absent such knowledge, there exists no evidence Rogers knew of a substantial risk of harm to the plaintiff on June 22, and by extrapolation, that he unreasonably responded to the risk by sleeping during his shift.

"Deliberate indifference describes a state of mind more blameworthy than negligence," and an ordinary lack of due care for a prisoner's interest or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 835; *see also Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Brown*, 894 F.2d at 1537; *see also Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016) (citing *e.g.*, *McElligott*, 182 F.3d at

11

1255); *Carter*, 352 F.3d at 1350. Thus, the plaintiff must allege specific facts tending to demonstrate a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." *Rodriguez*, 508 F.3d at 617.

At best, the plaintiff's allegations against Rogers portray negligence, not deliberate indifference. Accordingly, the motion for summary judgment filed by defendant Rogers warrants granting.

### d. Captain Kenneth Smith

The plaintiff asserts a claim against Captain Smith for the June 22 incident on due to his failure to protect plaintiff. Although plaintiff did not identify the specific assailants he feared, he provided enough information to survive summary judgment on the Eleventh Circuit standard for a failure-to-protect claim.

"[I]it is settled that 'a prison official [cannot] escape liability for deliberate indifference by showing that . . . he did not know that the complainant was especially likely to be assaulted *by the specific prisoner who eventually committed the assault*,' as long as the official was otherwise aware that the victim faced a substantial risk of serious harm." *Marbury*, 936 F.3d at 1236 (footnote citation omitted) (emphasis in original). To prevail in such a scenario, a plaintiff must demonstrate that prison "officials . . . possess enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* (footnote citation omitted).

Therefore, "a plaintiff can establish deliberate indifference to a substantial risk of serious harm where he has given prison officials [sufficient] information enabling them to conclude that the risk was substantial and not merely possible." *Id*. As the *Marbury* decision portrays, the Court's opinion in *Rodriguez v. Secretary for Department of Corrections*, 508 F.3d 611 (11th Cir. 2007) elucidates the information required to hold a prison official liable for an attack by unspecified assailants. *Marbury*, 936 F.3d at 1236. As the Court delineated, "*Rodriguez* involved a series of threats that contained enough specific information -- the threats came from members of the plaintiff's former gang [that they would kill him upon release into the general population] -- that prison officials could have reasonably inferred that there was a substantial, not merely possible, risk of harm." *Id*. at 1237; *see also Green*, 798 F. App'x at 424 ("[W]hile not identifying a particular individual who posed a threat," the plaintiff in *Rodriguez* provided specific information -- his former gang's threat of death due to his renunciation of membership, the presence of gang members at his prison, and requests for a transfer to another institution or for placement in protective custody to prevent an attempt on his life – such that "'a reasonable juror could find . . . that [the prison official] actually knew [plaintiff] faced a substantial risk of serious harm.'") (quoting *Rodriguez*, 508 F.3d at 621-22).

Based upon the explication of *Rodriguez* in *Marbury* and *Green*, a reasonable jury could conclude that defendant Smith possessed sufficient information of the threats plaintiff Williams faced from other inmates. As recounted previously, Williams declares

13

that in April, May, and June, 2019, he and fellow prisoner Jacoby told Smith that "inmates" had "pulled knives on us," broken into "our lockers and stole from us," and "jumped on us when we don't give them Jacoby's money." (Doc. 1 at 2). Inmates subjected Williams, as Jacoby's "friend, protector, and provider," to extortion, assault, and theft if not given "Jacoby's money." (Doc. 1 at 2, 5). Williams and Jacoby asked Smith "to move" them from D-Dorm to F-Dorm because it offered a safer environment for homosexual men and other "prey" to live. (*Id.* at 12). Smith repeatedly refused to move Williams and Jacoby to another dorm or "remove the problem inmates" from D-Dorm. (*Id.* at 4). Rather, Captain Smith told Williams, "'You're a black man ain't ya? Ain't you and Jacoby Gangsters? Why don't you guys just kill these people extorting [you] or pay someone else to make our problems go away!" (*Id.* at 2).

Based upon the foregoing alleged facts, defendant Smith possessed prior, actual knowledge that inmates had repeatedly extorted, stole from, violently threatened, and attacked Williams prior to June 22. Smith refused to alleviate the substantial risk of harm to Williams and told Williams to protect himself by utilizing violence in one form or another. If the alleged facts are true, Smith "was in a position to take steps that could have averted the [violent] incident . . . but, through callous indifference, failed to do so." *Williams v. Bennett*, 689 F. 3d 1370, 1384 (11th Cir. 1982).

Accordingly, defendant Smith's motion for summary judgment warrants denial.

14

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court **DISMISS WITH PREJUDICE** plaintiff Williams's claim against John Doe. The undersigned **FURTHER RECOMMENDS** the court **GRANT** the motion for summary judgment as to defendant Rogers and **DENY** it as to defendant Smith. Finally, the undersigned **RECOMMENDS** the court **REFER** the plaintiff's Eighth Amendment claim against defendant Smith to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection,

however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 1st day of February, 2021.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE

17